IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 23 CR 426 |
| v. | ) | |
| | ) | Hon. Jorge L. Alonso |
| OSWALDO ESPINOSA, *et al.* | ) | |
| (David Berger), | ) | |
| | ) | |
| Defendants. | ) | |

**<u>Memorandum Opinion and Order</u>**

The nineteen-count superseding indictment (ECF No. 195) ("Superseding Indictment") names eighteen defendants. Currently before the Court is Defendant David Berger's Amended Motion for Severance (the "Motion"). (ECF No. 251.) Berger challenges his joinder in this case as improper under Fed. R. Crim. P. 8(b), and alternatively requests relief from prejudicial joinder pursuant to Fed. R. Crim. P. 14. For the reasons that follow, Defendant's Motion is denied.

The Superseding Indictment details the activities of an alleged drug conspiracy. Essentially, the Superseding Indictment charges that Defendant Oswaldo Espinosa was the leader of an international drug trafficking organization, the "Espinosa DTO." The Espinosa DTO allegedly imported cocaine into the United States from Mexico, transported cocaine across the United States, delivered wholesale quantities of cocaine to distributors and customers, collected cash from the sale of cocaine, and transferred the cash proceeds from the United States to Mexico for the benefit of Espinosa and others. During the course of the alleged conspiracy, the Espinosa DTO allegedly trafficked thousands of kilograms of cocaine and laundered tens of millions of dollars in drug proceeds.

1

The Superseding Indictment alleges various methods by which the Espinosa DTO moved narcotics and cash into and around the United States. In relevant part, the Superseding Indictment alleges that members of the Espinosa DTO—other Defendants in this case— transported cocaine and/or cash proceeds to various locations across the United States and/or Mexico on private chartered airplanes. The Espinosa DTO allegedly used cash drug proceeds to pay for the chartered private air travel by using multiple intermediaries to process payments for the flights. Berger is one such alleged intermediary. Specifically, the Superseding Indictment alleges, "It was further part of the conspiracy that ESPINOSA and other members of the ESPINOSA DTO used cash drug proceeds to pay for the chartered private air travel described above in paragraphs 4 and 5, including via transactions processed by Individual A and David Berger." (Superseding Indictment ¶ 7.)

Count One of the Superseding Indictment charges Espinosa and ten others (not Berger) with conspiracy to possess with intent to distribute cocaine. Counts Two through Six of the Superseding Indictment charge various codefendants with distribution and possession with intent to distribute cocaine. Count Seven charges all of Berger's codefendants (not Berger) with conspiracy to commit money laundering by various means, including by engaging in transactions designed to avoid a transaction reporting requirement under federal law. Count Eight charges Espinosa and a codefendant with money laundering. Counts Twelve through Nineteen charge three codefendants with offenses related to procuring and transporting bulk cash on behalf of the Espinosa DTO.

Counts Nine, Ten, and Eleven charge Berger with crimes related to the manner in which he allegedly deposited the cash drug proceeds he received from the Espinosa DTO. Counts Ten and Eleven charge Berger with money laundering in connection with two series of cash deposits

Berger made on December 17, 2020, and January 13, 2021. Count Nine charges Berger with structuring cash deposits between December 2020 and on or about May 29, 2021, to avoid transaction reporting requirements.

### *Joinder Under Rule 8(b)*

Federal Rule of Criminal Procedure 8(b) permits the government to charge two or more defendants in the same indictment "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed. R. Crim. P. 8(b). The Seventh Circuit construes Rule 8(b) "broadly to allow liberal joinder in order to enhance judicial efficiency." *United States v. Stillo*, 57 F.3d 553, 556 (7th Cir. 1995) (citing *United States v. Curry*, 977 F.2d 1042, 1049 (7th Cir. 1992)). "[T]he rule recognizes that joint trials are beneficial not only for efficiency but because they limit inconvenience to witnesses, avoid delays in bringing defendants to trial, and allow the 'total story' to be presented to a single jury." *Id.* at 556–57.

In determining whether there is misjoinder, a court must look solely to the allegations in the indictment. *United States v. Daniels*, 803 F.3d 335, 340 (7th Cir. 2015); *United States v. Velasquez*, 772 F.2d 1348, 1354 (7th Cir. 1985). The Seventh Circuit has "interpreted the language 'same series of acts or transactions' to mean 'acts or transactions that are pursuant to a common plan or common scheme.'" *United States v. Lanas*, 324 F.3d 894, 899 (7th Cir. 2003) (quoting to *United States v. Todosijevic*, 161 F.3d 479, 484 (7th Cir. 1998)). While "defendants in a joint trial do not need to be charged in every count, or with the same crimes, where multiple defendants are charged all of the counts must be related to the same common plan or scheme." *Daniels*, 803 F.3d at 340 (citing *Velasquez*, 772 F.2d at 1352–53).

While Rule 8(b) concerns joinder of multiple defendants, Rule 8(a) permits the government to "charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Although Berger does not argue misjoinder under Rule 8(a), "[t]he government cannot bootstrap multiple defendants with similar but unconnected offenses into a single indictment by combining Rules 8(a) and 8(b) and the existence of overlapping defendants." *Stillo*, 57 F.3d 553 at 557; *see also United States v. Williams*, No. 19 CR 722-11, 2021 WL 4243796, at *1 (N.D. Ill. Sept. 17, 2021) ("Rule 8(b) does not allow the government to 'bootstrap multiple defendants with similar but unconnected offenses into a single indictment.'" (quoting *United States v. Simone*, 931 F.2d 1186, 1192 n.6 (7th Cir. 1991))).

With respect to the money laundering counts (Counts Ten and Eleven), the parties agree that the government is required to prove beyond a reasonable doubt, among other things, that (1) the cash deposits involved the proceeds of the felonious buying and selling and otherwise dealing in a controlled substance; (2) that Berger knew that the transaction was designed in whole or in part to avoid a transaction reporting requirement under federal law; and (3) that Berger knew that the money involved in the transaction represented the proceeds of some form of unlawful activity. *See* Pattern Criminal Jury Instructions of the Seventh Circuit (2023 ed.), 18 U.S.C. § 1956(a)(1)(B)(ii) Money Laundering—Avoiding Reporting—Elements.

Berger argues that the government does not allege, and need not prove, that Berger knew the money at issue was the proceeds of drug dealing specifically. Berger further argues that the Superseding Indictment does not allege that Berger participated in or knew of the drug trafficking and money laundering activities of any of the other defendants, nor that any of the

other defendants participated in or knew of Berger's alleged structuring or money laundering. Berger points out that most of the other defendants are charged in the drug conspiracy count, and all of the other defendants are charged in the money laundering conspiracy count. As the argument goes, the Superseding Indictment therefore charges all of the other defendants with participating in a common scheme or plan—to deal in drugs and launder what they knew to be drug money—with Berger being the one, standalone exception.

Berger relies upon *United States v. Menashe* for the proposition that for a "common plan or scheme" to be "common" there must be mutual awareness. 741 F. Supp. 1135 (S.D.N.Y. 1990). There, the misjoined defendant represented the only overlap between two alleged conspiracies that were similar in nature—violations of the Arms Export Control Act—but which had no other overlapping members or facts. *Menashe* is distinguishable from the circumstances here, where there is a significant factual overlap between Berger's alleged money laundering and structuring and the alleged drug trafficking and money laundering conspiracies. The government will have to prove, among other things, that the cash deposits involved the proceeds of dealing in a controlled substance and that Berger knew the money were the proceeds of some form of unlawful activity.

The government, on the other hand, points to *United States v. Sims*, wherein the defendant argued that joinder violated Rule 8(b) because she was not alleged to have known about or participated in the alleged RICO enterprise, extensive drug distribution operation, alleged murder, or beatings. 808 F. Supp. 607, 617 (N.D. Ill. 1992). The court found that the indictment established a common plan or scheme because the defendant's money laundering was related to the RICO enterprise and drug distribution operation in that it "dealt with the proceeds of those operations so as to conceal the existence of and further the central conspiracy." *Id.* The

government argues that Berger's money laundering and structuring actions were connected to the underlying drug conspiracy in a similar fashion.

The Court agrees. "The indictment need not charge a single overarching conspiracy, provided the separate conspiracies it charges arise from a common plan or scheme and so could alternatively have been charged as a single conspiracy." *Daniels*, 803 F.3d at 340 (quoting *Velasquez,* 772 F.2d at 1352–53). "[A] 'conspiracy and its cover-up are parts of a common plan.'" *United States v. Warner*, 498 F.3d 666, 699 (7th Cir. 2007) (quoting *Velasquez,* 772 F.2d at 1353–54)). Berger's alleged money laundering and structuring actions are alleged to have dealt with the proceeds of the drug trafficking operations in a manner that Berger allegedly knew was designed to avoid a transaction reporting requirement. Espinosa and other members of the Espinosa DTO are alleged to have paid for chartered private air travel (to transport drugs and cash proceeds around the country) via transactions processed by Berger and another unnamed individual. In other words, Berger's alleged money laundering and structuring actions furthered the central conspiracies and were related to the same common drug trafficking and money laundering plan or scheme as Berger's codefendants. It is immaterial that Berger is not alleged to have known all the details of the Espinosa DTO or other defendants' money laundering actions. *Cf. United States v. Fitzgerald*, 579 F.2d 1014, 1018 (7th Cir. 1978) ("It is immaterial that each of the [defendants] did not participate in all the activities or even know all the details of the conspiracy." (citing *Blumenthal v. United States*, 332 U.S. 539, 557–58 (1947))); *United States v. Hickey*, 360 F.2d 127, 138 (7th Cir.); *United States v. Bastone*, 526 F.2d 971, 981 (7th Cir. 1975)).

For all of these reasons, Berger is alleged to have participated in the "same act or transaction or in the same series of acts or transactions" as his codefendants and there is no misjoinder. Berger's Motion is denied under Federal Rule of Criminal Procedure 8(b).

### *Severance Under Rule 14*

Berger also moves for severance under Criminal Rule 14(a), which authorizes a court to sever charges when "consolidation for trial appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). A defendant who moves for severance under Rule 14(a) must demonstrate that, absent severance, he is unlikely to obtain a fair trial. *See United States v. Stokes*, 211 F.3d 1039, 1042 (7th Cir. 2000). To meet his burden, a defendant must show that "there is a serious risk that a joint trial would compromise a specific trial right . . . or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). "In all but the most unusual circumstances, the risk of prejudice arising from a joint trial is outweighed by the economies of a single trial in which all facets of the crime can be explored once and for all." *United States v. Goodwin*, 496 F.3d 636, 644 (7th Cir. 2007) (quoting *United States v. Carrillo*, 435 F.3d 767, 778 (7th Cir. 2006)).

Berger argues that severance is warranted because (1) there is a gross disparity in the evidence between Berger and the other defendants; (2) there likely will be evidence admitted against other defendants that would not be admissible if Berger were tried alone; and (3) evidence of a codefendant's wrongdoing could erroneously lead a jury to conclude that Berger is guilty. Berger points out that he is the sole defendant in three of the Superseding Indictment's nineteen counts, and there are no allegations that Berger was aware of or participated in the overarching drug and money laundering conspiracies.

One theme lies at the heart of each of Berger's three arguments: a danger of spillover prejudice due to the accumulation of evidence against other defendants that should not be considered with respect to Berger. To show prejudicial spillover, Berger "must overcome the dual presumptions that a jury will capably sort through the evidence and will follow limiting instructions from the court to consider each count separately." *United States v. Turner*, 93 F.3d 276, 284 (7th Cir. 1996) (citation omitted). The Seventh Circuit has cautioned that "mere speculation of 'spill over guilt' is not enough to rebut these twin presumptions." *United States v. Lopez*, 6 F.3d 1281, 1286 (7th Cir. 1993) (citation omitted); *United States v. Clark*, 989 F.2d 1490, 1500 (7th Cir. 1993) ("The fact that the government has greater evidence against one codefendant does not automatically give the other codefendant grounds for severance." (citation omitted)). Berger must show that the jury would "rel[y] on evidence presented on one set of counts when reaching a conclusion on the other set," *United States v. Peterson*, 823 F.3d 1113, 1124 (7th Cir. 2016) (quoting *United States v. Ervin*, 540 F.3d 623, 628 (7th Cir. 2008)), yet he does not identify any specific evidence admissible against other defendants, but not against him, that he believes will cause him prejudice despite the delivery of appropriate limiting instructions. For this reason, the two main cases upon which Berger relies are inapposite. *See United States v. Troutman*, 546 F. Supp. 2d 610, 615 (N.D. Ill. 2008) (identifying specific statements of a codefendant that would be potentially inadmissible and prejudicial against the moving defendant); *United States v. Stoecker*, 920 F. Supp. 876, 886 (N.D. Ill. 1996) (moving defendant identified, among other things, specific evidence that would be admissible against codefendants but not him).

"The Supreme Court has held that limiting instructions 'often will suffice to cure any risk of prejudice caused by joinder[.]'" *United States v. White*, 737 F.3d 1121, 1134 (7th Cir. 2013)

(cleaned up) (quoting *Zafiro*, 506 U.S. at 539). The Court will properly instruct the jury that the government bears the burden of proving each defendant guilty beyond a reasonable doubt, that the jury must consider each defendant and each count separately, and that the jury should not consider evidence admitted only as to certain defendants against the other defendants. *See Peterson*, 823 F.3d at 1124 (holding that proper jury instructions generally are "an adequate safeguard against the risk of prejudice in the form of jury confusion, evidentiary spillover and cumulation of evidence" (quoting *United States v. Berardi*, 675 F.2d 894, 901 (7th Cir. 1982))); *United States v. Davis*, 724 F.3d 949, 956–57 (7th Cir. 2013) ("[T]he district court diminished any spillover prejudice by instructing the jury that each count and the evidence relating to it should be considered separately." (cleaned up)). Berger identifies nothing particular about this case that would render such instructions unable to appropriately guide the jury in its consideration of the Superseding Indictment's various charges.

Finally, Berger raises multiple points on the interests of judicial economy. First, Berger argues that severance would not require the government to present all of the same evidence twice, and the only duplication would be the evidence necessary to establish that the funds at issue in Counts Ten and Eleven are the proceeds of drug dealing. But Berger again does not point to any specific evidence. It is apparent that there is an overlap in evidence, but the Court is not persuaded by mere speculation that the duplication would indeed be minor.

Second, Berger argues that a joint trial with multiple defendants may last longer than the combined total of two separate trials, particularly where the defendant seeking severance is charged in counts that do not also charge other defendants. But at this time, it is unknown how many of Berger's codefendants will take their cases to trial. Berger does not demonstrate that the

"risk of prejudice arising from a joint trial is outweighed by the economies of a single trial in which all facets of the crime can be explored once and for all." *Goodwin*, 496 F.3d at 644.

Accordingly, Berger's motion for severance under Rule 14(a) is denied. The denial is without prejudice because, as decisions are made by codefendants regarding whether they intend to take their cases to trial and the evidence that will be admissible as to other defendants crystalizes, circumstances warranting severance under Rule 14(a) may arise or become apparent.

### *Conclusion*

For the reasons set forth above, Defendant David Berger's Amended Motion for Severance [251] is denied.

**SO ORDERED.**                                    **ENTERED: December 3, 2024**

**HON. JORGE ALONSO**
**United States District Judge**